IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ROGER PRAI, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 04-3347-CV-S-ODS |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) |
| Defendant. | ) |

ORDER AND OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is Defendant's Motion for Summary Judgment. For the following reasons, the motion (Doc. # 24) is granted.

I. BACKGROUND

The parties dispute some facts, but the truly relevant facts are not in dispute. Plaintiff worked for a television station in Omaha, Nebraska from 1966 until 1993. Among the benefits he received was coverage under a long-term disability plan. Plaintiff desired to augment the coverage, and in January 1986 applied for additional coverage on his own with Connecticut Mutual Life Insurance Company (which later merged into Massachusetts Mutual Life Insurance Company, the defendant in this case). This followed presentation of a proposal from an insurance agent in December 1985 that suggested three different types of coverage: (1) a "Benefit Maximizer" that supplemented the coverage provided by Plaintiff's group coverage from his employer, (2) a "Partial Disability Benefits Rider" that provided coverage in the event of Plaintiff's partial disability, and (3) and a "Level Benefit Rider" (also referred to as the "Extended Term Benefits Rider") which is the focal point of this lawsuit. The proposal explains "[m]ost Group Disability Income Plans will pay a benefit only if you can't work. If you can work, you may no longer be considered disabled and may lose your group benefits

– even though you're only working part-time." The Level Benefit Rider applies if the insured returns to work in any occupation other than the one in which he was previously employed (be it full-time or part-time) and the actual benefit is based on the ratio of the insured's pre-disability and post-disability income. R. at 172.[1]

Plaintiff ultimately obtained a policy that contained the three types of coverage described in the proposal. One aspect of the policy that is critical to the resolution of this case – the definition of "Total Disability," which is defined as follows: "You're totally disabled if because of sickness or injury you can't do the main duties *of your occupation*. You must be under a doctor's care." R. at 142 (emphasis supplied). In other words, if the insured's sickness or injury precluded him from performing his current occupation but left him free to perform other work, he would still be considered disabled. However, as explained in the December 1985 proposal, this is contrary to most group plans offered by employers, which would not supply benefits for such an individual. Thus, a person in that situation would maintain the Benefit Maximizer offered by Defendant but lose the employer-provided coverage that was to be augmented. This is where the Level Benefit Rider comes into play.

The Level Benefit Rider has a one year waiting period and applies if the insured is totally or residually disabled.[2] To differentiate the coverage from the Benefit Maximizer, the Level Benefit Rider requires the insured to "have current income from an occupation other than the one you had when your disability started." R. at 146. This requirement assures the insured is "totally disabled" as defined by the policy but, consistent with the Level Benefit Rider's purpose, is able to work in some other occupation and thus (probably) has lost the benefit of his previous employer's group policy. The benefit paid is a function of the difference between the insured's pre-

---

[1]"R. at ___" is a reference to the compilation prepared by Defendant. It contains documents, depositions, and other material developed during discovery. Both parties have relied on the information in this compilation, and there is no dispute about the Court's ability to rely on the information contained therein.

[2]There is no contention Plaintiff was "residually disabled" within the policy's meaning, so the matter will not be discussed further.

2

disability and post-disability income, which also furthers the purpose for the Level Benefit Rider.

Plaintiff left his job at the TV station in the Fall of 1993 and, with his wife, moved to Ozark, Missouri, where they opened a photography studio. In November 1999, Plaintiff filed for disability benefits, claiming he last worked on August 2, 1999, and had been totally unable to work since August 10, 1999, due to Sarcoidosis. After the sixty-day waiting period expired, Defendant began paying benefits under the Benefit Maximizer. Although the details and import of subsequent events are disputed, there is no doubt Plaintiff inquired about or requested benefits under the Level Benefit Rider.[3] In this lawsuit, Plaintiff contends he is entitled to but has not received benefits under the Level Benefit Rider.

## I. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984),

---

[3]One of the issues raised by the parties requires determining whether Plaintiff ever actually applied for the benefits he now seeks. In light of the Court's rulings on other issues, there is no need to consider this matter. Similarly, the Court's rulings on the issues discussed herein make it unnecessary to consider the parties' arguments regarding the validity of the 365 day waiting period.

3

cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A.

Plaintiff first contends the policy is ambiguous. Nebraska law (which the parties agree applies to this case) dictates that insurance policies are construed as contracts, and the court's obligation is to give effect to the parties' intentions at the time the contract was made. SFH, Inc. v. Millard Refrigerated Services, Inc., 339 F.3d 738, 742 (8th Cir. 2003). If the policy is unambiguous, the court must give effect to the terms of the policy as it is written; if it is ambiguous, the court may look beyond the policy to determine the parties' intent, keeping in mind that an ambiguous policy should be construed in favor of the insured. Id. at 744 n.6. "Under Nebraska law, a contract is ambiguous 'when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.'" Id. (quoting Volquardson v. Hartford Ins. Co. of the Midwest, 647 N.W.2d 599, 605 (Neb. 2002)).

Plaintiff argues two of the requirements for receiving the Level Benefit Rider are contradictory. According to Plaintiff, the requirement that he be "totally disabled" conflicts with the requirement that he have income from an occupation. Applying ordinary meaning to the phrase, Plaintiff reasons that a totally disabled individual cannot work and earn income. The flaw in Plaintiff's argument is that it ignores the policy's definition of the phrase. The phrase is defined to describe an individual who cannot return to their former occupation due to sickness or injury; thus, a person who cannot return to their former occupation but can perform some other work in spite of their sickness or injury is still "totally disabled" within the meaning of the policy. Conditioning benefits under the Level Benefit Rider on the insured being (1) unable to return to their prior work but (2) actually performing work in a different occupation is not contradictory, so the ambiguity Plaintiff posits does not exist.

4

<u>B.</u>

Plaintiff next argues he was earning income from an occupation other than the one he had when his disability started. The Record is devoid of evidence that would permit a jury to credit this contention.

In 2001 or 2002, Plaintiff's wife started a business as a mark to market trader, which she described almost like day-trading in stocks and options; while not exactly day-trading, the holding period for the investments was very short. She further explained a "mark to market trader" is an IRS designation that allows the trader to pay capital gains or losses based on the portfolio as a whole as opposed to the traditional method of calculating gains and losses for each individual security. In this way, the stock purchased and sold is treated much like inventory. R. at 535-39; <u>see also</u> R. at 80-81, 549. The purchases and sales were on the couple's account; they were making (or losing) money solely for themselves, not for customers. Plaintiff helped his wife by watching CNBC and reading financial publications, then telling his wife what he heard or read. R. at 84-85, 541-42, 547-48. Nobody was hired to replace Plaintiff when he was too ill or otherwise unavailable to watch the television or read the periodicals. R. at 87, 551. Plaintiff was not paid for his services. R. at 86, 552.

Investing solely for one's own financial benefit does not qualify as an occupation as that term is commonly understood. Plaintiff relies on part of the definition found in *Black's Law Dictionary*, but the entire definition demonstrates the point:

> That which principally takes up one's time, thought, and energies, especially, one's regular business or employment; also, whatever one follows as the means of making a livelihood. Particular business, profession, trade, or calling which engages individual's time and efforts; employment in which one regularly engages or vocation of his life.

By relying on just the first clause of the first sentence, Plaintiff would transform anything into an occupation. Sitting and watching baseball games on television would qualify because it takes up one's time, thought and energies. Volunteering at a charity would also qualify for the same reason. The focus of the first clause defines a different aspect

5

of occupation, one that is synonymous with "take up" or "consume." It has no place in this context. The proper focus is on the aspects of the definition relating to business, profession and employment. Considered in context, this aspect of the word "occupation" is not commonly understood as applying to managing one's own finances.

The context is also important because the policy requires the claimant to have income from the occupation, and "income" is defined as "[g]ross income from any job or business" but does not include, *inter alia*, investment income, rent or royalties. R. at 142. Therefore, Plaintiff did not have income as contemplated by the policy, so he was not eligible for benefits under the Level Benefit Rider.

### III. CONCLUSION

The policy is not ambiguous, and the undisputed facts in the record demonstrate Plaintiff did not satisfy the unambiguous requirements for receiving benefits under the Level Benefit Rider. Defendant's Motion for Summary Judgment is therefore granted.

IT IS SO ORDERED.

DATE: May 16, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

6